UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RONALD LUCKEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-389-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ABBOTT LABORATORIES, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Defendant Abbott Laboratories Inc. ("Abbott") has moved to dismiss Plaintiff Ronald Luckey's Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 19] After reviewing the parties' arguments, the undersigned is satisfied that Luckey's state claims against Abbott are preempted. Thus, he fails to state a claim upon which relief may be granted.

**I.**

Luckey had a Trifecta Tissue Heart Valve with Glide Technology ("Trifecta GT") implanted during a surgical procedure in 2018. [Record No. 16 at ¶ 18] The Trifecta GT device was "originally developed, licensed, manufactured, marketed and sold" by St. Jude Medical, Inc. *Id.* at ¶ 5. The United States Food and Drug Administration ("FDA") granted the Trifecta GT's pre-market approval ("PMA") in 2016 pursuant to 21 CFR 814. *Id.* at ¶ 6. Abbott, a "multinational medical device and health care company," acquired St. Jude Medical, Inc. in 2017. *Id.* at ¶ 6.

- 1 -

It is alleged that, as early as 2016, the "publicly available data indicated that well over 100 Abbott Trifecta valves had demonstrated aortic regurgitation." [Record No. 16 at ¶ 9] That number continued to climb with 100 additional valves each year exhibiting that same issue. *See id.* at ¶¶ 10–15. But despite this "publicly available data," Abbott "consistently warranted, advertised and marketed" that the Trifecta GT valve "would last fifteen to twenty years." *Id.* at ¶ 16.

In February 2023, the FDA released a letter to healthcare providers that informed them that "[i]nformation from published literature suggests a higher cumulative incidence of early (five years or less) [structural valve deterioration ("SVD")] for Trifecta valves compared to other commercially available surgical bioprosthetic valves." [Record No. 16 at ¶ 19] Abbott sent letters to Trifecta valve customers the same day informing them that "a recent literature review of the Trifecta valve indicates a higher early and midterm cumulative incidence of SVD relative to comparator bovine pericardial valves." *Id.* at ¶ 20. Abbott initiated a voluntary withdrawal of the "Trifecta family of valves" five months later. *Id.* at ¶ 21.

In 2024, Luckey "began experiencing fatigue and shortness of breath." He then reported those concerns to his cardiologist. [Record No. 16 at ¶ 22] Luckey's preliminary echocardiogram indicated that his "Trifecta valve potentially had thickening and calcification of the aortic valve leaflets, aortic stenosis and aortic regurgitation." *Id.* at ¶ 24. Trans-esophageal echocardiogram imaging confirmed aortic valve regurgitation and aortic valve stenosis, resulting from "prosthetic thickening/calcification." *Id.* at ¶ 25. Cardiology physicians at the Cleveland Clinic concluded that Luckey's Trifecta valve likely had early SVD and scheduled surgery for September 2024 to remove and replace the valve. *See id.* at ¶¶ 26, 28.

The post-surgical pathology report indicated the valve had tears, "severe calcification and severe pannus formation," as well as "severe calcification and severe fibrosis on the leaflets" with one being immobile. [Record No. 16 at ¶ 29] These failures paralleled those that were the impetus for Abbott's withdrawal of the Trifecta GT from the market. *Id.* at ¶ 30.

Luckey initially filed his Complaint on September 16, 2025, in Fayette Circuit Court. [Record No. 1-1] However, Abbott removed the case to this Court pursuant to its diversity jurisdiction. [Record No. 1] Luckey tendered an Amended Complaint by agreement on January 6, 2026. [Record Nos. 12 and 16]

Luckey brings claims under Kentucky law for strict liability (Count I), negligence (Count II), breach of express and implied warranties (Count III), and failure to warn (Count IV). [Record No. 16] He seeks damages against Abbott relating to his surgery, hospitalization, outpatient care, lost wages and future earning capacity, and pain and suffering. *Id.* at ¶ 31. Abbott moves to dismiss the Amended Complaint, requesting a hearing on the motion and arguing that Luckey's claims are preempted by federal law. [Record No. 19] Alternatively, it contends that those claims are insufficiently pled and outside the applicable statute of limitations. [Record No. 19-1 at 9]

Luckey agrees that a hearing is necessary but insists that his Amended Complaint is adequately pled. [Record No. 25] This matter is fully briefed and ready for the Court's resolution. The Court, however, concludes that a hearing is not necessary to resolve the pending motion.

**II.**

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the complaint alleges "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  And while plaintiffs are not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, they must demonstrate "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.

Next, when reviewing a motion under Rule 12(b)(6), the court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief."  *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990).  A court may consider exhibits attached to the defendant's motion to dismiss if they are referenced in the complaint and central to the claims therein.  *Bassett v. Nat'l Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

Finally, whether federal preemption thwarts the plaintiff's state law claims is a question of law that may be decided on motion to dismiss.  *See GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 475 (6th Cir. 1997); *McDaniel v. Upsher-Smith Lab'ys, Inc.*, 893 F.3d 941, 944 (6th Cir. 2018).

**Regulatory Background and Preemption**

Congress enacted the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA") in 1976 to govern medical devices intended for human use.  The MDA was designed to "impose a regime of detailed federal oversight" for devices that were previously regulated only by state law.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315–16 (2008).  Medical devices under the MDA were grouped into three classes based on their risk to human health.  *See* 21 U.S.C. § 360c(a)(1).  Class III devices are those that either present "a potential unreasonable risk of illness or injury" or are "for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health."  21 U.S.C. § 360c(a)(1)(C).

Prior to marketing and sale, Class III devices must undergo "premarket approval to provide reasonable assurance of its safety and effectiveness."  21 U.S.C. § 360c(a)(1)(C).  The premarket approval ("PMA") process is lengthy and rigorous.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996) (describing the process as "rigorous" and noting that the FDA spends an average of 1,200 hours on each PMA submission).  PMA applications include reports and investigations on the device, a description of the manufacturing process, performance standards of the device, among other things.  *See* 21 U.S.C. § 360e(c).  The FDA approves PMA applications "if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness.'"  *Riegel*, 552 U.S. at 318 (quoting § 360e(d)).  Thus, the FDA must "weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use."  *Riegel*, 552 U.S. at 318 (quoting § 360c(a)(2)(C)).  As a result, it may "approve devices that present great risks if they nonetheless offer great benefits in light of available alternatives."  *Id.*

**Express Preemption:** "Devices that receive the PMA and comply with its requirements are entitled to the benefit of the MDA's express preemption provision[.]" *White v. Stryker Corp.*, 818 F. Supp. 2d 1032, 1036 (W.D. Ky. 2011). That provision "prohibits a state from establishing or allowing 'any requirement' relative to a medical device '(1) which is different from, or in addition to, any requirement applicable' under the MDA" and (2) those that relate "'to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device' under the MDA." *Id.* (quoting 21 U.S.C. § 360k(a)).

The United States Supreme Court clarified that "[s]tate requirements are pre-empted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law," so the preemption provision "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel*, 552 U.S. at 330 (quoting *Lohr*, 518 U.S. at 495). Thus, the express preemption analysis under the MDA proceeds in this way: first, a court "must determine whether the Federal Government has established requirements applicable" to the medical device, and second, if so, the court must ascertain whether a plaintiff's state-law claims would impose "requirements with respect to the device that are 'different from, or in addition to,' the federal ones [which] relate to safety and effectiveness." *Id.* (quoting § 360k(a)).

To clarify, Section 360k does not prevent a state from providing a damages remedy for claims premised on an FDA regulation violation because those state duties would "parallel," rather than add to, federal requirements. *See id.* "Some courts have phrased this as a 'mirror and ceiling' rule: the state law must mirror the federal requirements, and the state law cannot break the 'ceiling' of the federal law by imposing additional requirements." *Banet v. Cooper*

*Companies, Inc.*, No. 4:24-CV-029-RGJ, 2025 WL 2810675, at *11 (W.D. Ky. Sept. 30, 2025) (quoting *Mories v. Boston Sci. Corp.*, 494 F. Supp. 3d 461, 468 (S.D. Ohio 2020)). Such claims, "when properly pled under the *Iqbal* and *Twombly* standards, provide an exception to federal preemption under the MDA." *Jackson v. Abbott Lab'ys Inc.*, No. 3:23-CV-419-RGJ, 2024 WL 4256340, at *4 (W.D. Ky. Sept. 20, 2024) (citing *Riegel*, 552 U.S. at 330).

**Implied Preemption:** Congress included a right of action provision in the FDCA, which provides, "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337(a). The Supreme Court has interpreted this to impliedly preempt a plaintiff from asserting state claims against a manufacturer for noncompliance with the MDA. *See Buckman Co. v. Plaintiffs Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *see also In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 936 (6th Cir. 2014). There, the *Buckman* Court clarified the scope of implied preemption and held that "the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law." *Id.* at 348.

In *Garcia v. Wyeth–Ayerst Laboratories*, the United States Court of Appeals for the Sixth Circuit read *Buckman* to prevent individual litigants from prosecuting medical device manufacturers for fraud against the FDA through state law tort actions. 385 F.3d 961, 966 (6th Cir. 2004) (holding that *Buckman* "teaches that state tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims") (citation omitted); *In re Aredia & Zometa Prods. Liab. Litig.*, 352 F. App'x 994, 995 (6th Cir. 2009) (applying *Garcia*'s holding to post PMA approval fraud claims and noting that the dispositive factor is whether the claim requires "proof of fraud committed against the FDA"); *Cupek v.*

- 7 -

*Medtronic, Inc.*, 405 F.3d 421, 424 (6th Cir. 2005) (barring *disguised* fraud on the FDA claims under *Buckman*).

**Preemption Pleading and Rule 12(b)(6):** Several courts within the Sixth Circuit have recognized that *Riegel* and *Buckman* create "a narrow gap" where claims must thread a difficult needle to avoid preemption. *See, e.g.*, *Hafer v. Medtronic, Inc.*, 99 F. Supp. 3d 844, 857 (W.D. Tenn. 2015). Specifically, the "'plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'" *Id.* (emphasis in original) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)).

That said, the specific pleading standard necessary to survive a Rule 12(b)(6) motion raising MDA preemption has yet to be addressed within this circuit. *Waltenburg v. St. Jude Med., Inc.*, 33 F. Supp. 3d 818, 827–32 (W.D. Ky. 2014) (detailing the circuit split on this issue and the seemingly inconsistent application of *Lohr*, *Buckman*, and *Riegel* in the Western and Eastern Districts of Kentucky); *see also Hayes v. Endologix, Inc.*, 449 F. Supp. 3d 676, 680 (E.D. Ky. 2020). Thus, following *Riegel*, it remains unsettled the degree of particularity necessary "to establish a 'parallel claim' and avoid preemption" on a motion to dismiss. *White*, 818 F. Supp. 2d at 1036.

For example, the Eighth Circuit required a plaintiff's pleading to identify the federal statute purportedly violated and specific facts outlining how that violation caused the injury alleged. *Id.* at 827–28 (citing *In re Medtronic, Inc.*, 623 F.3d at 1204). Whereas the Eleventh Circuit required less, acknowledging a plaintiff's difficulty in advancing past a Rule 12(b)(6) motion considering that "much of the critical information is kept confidential as a matter of

federal law [and] there is no public access to complete versions of [the FDA's premarket approval] documents.'" *Id.* (additions in original) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), *cert. denied*, 132 S.Ct. 498 (2011)).

The Fifth Circuit synthesized both approaches, noting that "[t]he key distinction between complaints that are sufficient to withstand a motion to dismiss and those that are not is . . . the existence of a manufacturing defect caused by a violation of federal regulations *and* allegations connecting a defect in the manufacture of the specific device to that plaintiff's specific injury." *Waltenburg*, 33 F. Supp. 3d at 828 (quoting *Bass v. Stryker Corp.*, 669 F.3d 501, 511–12 (5th Cir. 2012) (emphasis in original)). The undersigned turns to the issues raised in Abbott's motion against this backdrop.

**III.**

The MDA's express preemption analysis proceeds as follows: "(1) is the product at issue subject to federal requirements? (2) If so, would Plaintiff's state law claims impose requirements that are different from or in addition to federal requirements? If the answers to both inquiries is yes, the claims are preempted" by 21 U.S.C. § 360k(a). *See Kitchen v. Biomet, Inc.*, No. 13-18-HRW, 2014 WL 694226, at *3 (E.D. Ky. Feb. 21, 2014). For implied preemption under *Buckman* (*i.e.*, fraud on the FDA claims), the Court also must consider whether the claim directly attempts to enforce federal law or usurp the FDA's authority under 21 U.S.C. § 337(a) to sanction manufacturers who skirt their statutory duties. The following synopsis takes each in turn.

At the outset, it is helpful to outline what Luckey claims Abbott did or failed to do with respect to the Trifecta GT. He first references 21 CFR 814.20(b)(8)(ii) (requiring manufacturers to disclose information relevant to the safety and effectiveness of the device)

- 9 -

and 21 CFR 820.100 (Quality System Regulation's Current Good Manufacturing Practice requirements on corrective and preventative action). [Record No. 16 at ¶¶ 32–36] Next, he alleges that "Abbott knew or should have known from available clinical data . . . that the Trifecta valve was unacceptably prone to early SVD and durability failures prior to and after its pre-market approval in 2016, yet failed to report the defect to the FDA or withdraw the product until 2023, and failed to institute appropriate corrective and preventive action in violation of the Federal Regulations." *Id.* at ¶ 37.

Essentially, Luckey's first allegation is that Abbott concealed issues with its device from the FDA, thereby violating the reporting requirements. However, there is no parallel state law (or cause of action) in Kentucky that requires a manufacturer to report adverse effects to the FDA. *Roberts v. Stryker Corp.*, No. 3:13-CV-957-H, 2014 WL 12911070, at *10 (W.D. Ky. Aug. 7, 2014) (finding Kentucky law imposed no duty to report adverse events to the FDA). Instead, this allegation is "a disguised fraud on the FDA claim" that is impliedly preempted under *Buckman*. *Cupek*, 405 F.3d at 423. To the extent that his failure to report claim is characterized as a negligent failure to warn claim, it is expressly preempted because the state claims entail duties different from or in addition to those required by the FDCA.

Next, Luckey argues that Abbott failed to timely withdraw its Trifecta valves. But in this instance, Abbott *voluntarily* withdrew its valves. It was under no obligation to do so under the FDCA. Again, insofar as Luckey asserts that the valves were not recalled consistent with the statutory scheme *because* Abbott failed to report issues with the device as required by 21 CFR 814.20(b)(8)(ii), that too is preempted as a fraud on the FDA claim. Further, his strict liability, negligence, and failure to warn theories are not parallel claims because they impose duties on Abbott that are different from or in addition to those required by the FDCA.

- 10 -

Finally, Luckey asserts that Abbott failed to institute appropriate corrective and preventive action in violation of the Current Good Manufacturing Practice requirements in 21 CFR 820.100. That regulation begins: "[e]ach manufacturer shall establish and maintain procedures for implementing corrective and preventive action." 21 CFR 820.100. It continues by providing that: "[the] procedures shall include requirements for" and then lists various actions designed to prevent and mitigate quality control issues and nonconforming products. *See id.* But here, Luckey makes no allegation that his particular valve suffered a quality control issue. Instead, he argues that *all* the Trifecta valves suffered from early failure. Nor does he identify a state duty that parallels the federal one. If his strict liability, negligence, and failure to warn claims are for Abbott's failure to abide by the FDCA, then none of those present the same duties as those in 21 CFR 820.100. Further, as Abbott argues, this regulation outlines *procedures* that Abbott needed to have in place rendering them too vague to be enforceable. And if Abbott failed to implement those procedures, that failure is one enforceable by the federal government, not private litigants, and preempted by *Buckman*.

Luckey cites no federal regulation that Abbott allegedly violated for his breach of warranty claim. Nor do the regulations he cites plausibly make out a parallel claim. If he is arguing that Abbott's statement (that the Trifecta GT was expected to last at least 15 years and was reasonably safe) was an express warranty beyond the labeling allowed by the FDA, then that is not a parallel claim because it is the FDA, not the manufacturer, that determines how a device can be marketed. Thus, a state law breach of warranty claim places duties on Abbott that are different or in addition to what the FDCA requires. Again, if Luckey is arguing that Abbott intentionally withheld or altered information that contradicted the device's expected lifespan, that would fail under *Buckman*.

- 11 -

For the sake of clarity and thoroughness, the Court turns to the parties' arguments and will provide additional analysis with supporting authority.

Abbott argues that Luckey's Kentucky law claims for strict liability, negligence, breach of express and implied warranties, and failure to warn relate to the safety and effectiveness of the Trifecta GT and impose requirements that are different from or in addition to federal requirements. [Record No. 19-1 at 15–16] It further insists that Luckey does not "plausibly state a parallel claim" because he fails to plead facts that establish a state law duty that is identical to a federal PMA duty. [Record No. 26 at 3] And his claims under Current Good Manufacturing Practice requirements are too vague to be enforceable. *Id.* at 3–4 (collecting cases). Finally, Abbott contends that Luckey's allegation that it failed to report the defect to the FDA is impliedly preempted. [Record No. 19-1 at 24, n.1]

But Luckey disagrees. He argues that his Amended Complaint is sufficiently pled because it identifies the federal regulations that Abbott violated and asserts that it knew or should have known of its device's propensity for early failure yet sought PMA anyway and continued manufacturing and marketing the device. [*See* Record No. 25 at 3–5.] Specifically, he claims that Abbott failed to timely inform the FDA of reported defects, withdraw the product before 2023, and institute corrective and preventative action in accordance with those regulations. *See id.* Concerning implied preemption, Luckey simply states: "Ron is not now seeking and has never sought to create a private right of action or similar 'fraud on the FDA claim' and therefore implied preemption is inapplicable." *Id.* at 8.

Here, however, all Luckey's claims impose requirements that are different from or in addition to federal requirements. And none of those state laws/causes of action "mirror the federal requirements." *Banet*, 2025 WL 2810675, at *11. For example, his strict liability

claim asserts that the Trifecta GT was "designed, manufactured and introduced into the marketplace . . . in a defective and unreasonably dangerous condition." [Record No. 16 at ¶ 40] But the federal PMA process sets out duties for manufacturers which Abbott needed to follow to receive the device's PMA designation. *Enlow v. St. Jude Med., Inc.*, 210 F. Supp. 2d 853, 858 (W.D. Ky. 2001) (quoting *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 228 (6th Cir. 2000) (noting that PMA's federal requirements "consist of 'the totality of the design, manufacturing processes, and labeling when coupled with the prohibition against modifying them' as found in the 'entire relevant PMA and accompanying PMA Supplement'"). Thus, Luckey's strict liability claim imposes requirements that are different from or in addition to the federal requirements. So too for his negligence claim, which accuses Abbott of failing to take corrective action and negligently designing, manufacturing, and testing the device. *Id.* at ¶ 53. These two claims are the same ones the *Riegel* Court considered and concluded that they "impose 'requirements' and would be preempted by federal requirements specific to a medical device." *See Riegel*, 552 U.S. at 323–24 (citation modified) (quoting *Lohr*, 518 U.S. at 512).

Luckey's failure to warn claim suffers from the same infirmity. When confronted with whether a failure to warn claim was preempted by § 360k(a), the panel in *Cupek* determined that any state law failure to warn claim, alleging that the defendant "failed to warn patients beyond warnings required by the FDA, or that Defendant failed to recall a product without first going through the PMA supplement process[,] would constitute state requirements 'different from' or 'in addition to' the requirements of the federal PMA application and supplement process." *Cupek*, 405 F.3d at 424 (quoting 21 U.S.C. 360k(a) and citing *Kemp*, 231 F.3d at 235); *see also Banet*, 2025 WL 2810675, at *1 (collecting cases). And that is what

- 13 -

Luckey alleges here:  that Abbott failed to warn consumers beyond what the FDA required and failed to timely recall the Trifecta GT.  [*See* Record No. 16 at ¶¶ 42, 53, 66–67.]

Luckey contends that Abbott breached express and implied warranties "that the Trifecta valve would last at least 15 years."  [Record No. 16 at ¶ 59]  However, "'express representations' relating to a device are 'limited to the labeling approved by the FDA.'" *Kitchen*, 2014 WL 694226 at *6 (quoting *Enlow*, 210 F. Supp. 2d at 861).  "Whether the claims 'arise from the representations of the parties' matters not—such an argument 'minimizes the comprehensive FDA regulation of medical device labeling.'" *Id.* (quoting *Enlow*, 210 F. Supp. 2d at 861–62).  "In other words, the representations a manufacturer may make with respect to a PMA device are limited to those approved by the FDA, and express warranty claims are therefore preempted." *Id.*  The same is true for Luckey's implied warranty claim. *Id.* at *7 (noting that the acceptable standards for design and manufacturing are set by the FDA and when state claims impose different standards they are preempted) (citations omitted).

In short, all Luckey's claims explicitly relate to safety and effectiveness and attempt to impose different obligations than those the FDA requires through the PMA process.  As such, they are expressly preempted under 21 U.S.C. § 360k(a).  As discussed previously, to the extent that he claims Abbott skirted its reporting requirements or failed to institute adequate quality control procedures under the Current Good Manufacturing Practice requirements, Luckey's claims are also impliedly preempted under *Buckman*.  If that were not enough, allowing Luckey's state-law claims to advance would result in the fact finder or court being called upon to determine the adequacy of the FDA's procedures and warnings, which is the "'kind of "inter-branch[] meddling" that concerned the Court in *Buckman*' [and] would both

usurp the agency's role and go beyond the court's institutional expertise." *Banet*, 2025 WL 2810675, at *16 (quoting *Marsh v. Genentech, Inc.*, 693 F.3d 546, 553 (6th Cir. 2012)).

Finding Luckey's claims preempted or otherwise insufficiently pled, the undersigned declines to address the statute of limitations issue raised by Abbott.

**IV.**

Having carefully considered the issues raised together with the parties' arguments, it is hereby

**ORDERED** that Defendant Abbott Laboratories Inc.'s motion to dismiss [Record No. 19] is **GRANTED**.

Dated:  March 26, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky